IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

RICHARD L. HARRIS,

    Plaintiff,

v.

DARCARS OF NEW CARROLLTON, INC., *et al.*

    Defendants.

Case No.: GJH-16-3601

## MEMORANDUM OPINION

Plaintiff Richard L. Harris brings this action against Defendants Darcars of New Carrollton, Inc. ("Darcars") and Chrysler Group, LLC, n/k/a FCA US LLC ("FCA US," collectively, "Defendants"), alleging that Defendants refused to honor express and implied warranties requiring them to repair damage to his vehicle caused by a manufacturing defect without cost to Plaintiff. Specifically, Plaintiff alleges Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and the Maryland Consumer Protection Act, Commercial Law Article ("CL") § 13-301 *et seq.*, and breached express and implied warranties. Now pending before the Court is Defendants' Motion for Summary Judgment, ECF No. 49, and Plaintiff's Motion to Strike Defendants' Expert Opinion, ECF No. 55. No hearing is necessary.

1

Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion is granted, in part, and denied, in part, and Plaintiff's Motion is denied.[1]

## I. BACKGROUND

Plaintiff purchased a new 2012 Chrysler 300 from Darcars in August of 2012. ECF No. 54-2 ¶ 3. The vehicle is covered by express limited warranties set forth in the warranty booklet, including a 36 month / 36,000 mile Basic Limited Warranty and a 5 year / 100,000 mile Powertrain Limited Warranty (hereinafter "express limited warranties"), covering "the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in materials, workmanship or factory preparation." ECF No. 50-1 at 6.[2] The warranty booklet also provides that the buyer "may have some implied warranties, depending on the state where your vehicle was sold or is registered." *Id.* at 1. However, the booklet states that the warranties do not cover incidental or consequential damages, nor do they cover damage caused by abuse, negligence, or misuse. *Id.* at 5, 18.

Plaintiff first experienced engine problems in September of 2013. Plaintiff testified that while driving the vehicle, the engine temperature gauge on the vehicle's dashboard display "jumped" and the car suddenly shut off. ECF No. 54-2 ¶ 7. At that time, Plaintiff saw both an engine symbol and "z" symbol on the dashboard display. *Id.* Darcars determined that both cylinder heads were warped from overheating and replaced the cylinder heads and camshaft free of charge. ECF No. 50-3; *see also* ECF No. 50-2 at 14.

---

[1] On June 19, 2017, the Court held a motions hearing and denied Plaintiff's Motion to Remand, ECF No. 29. The Court determined that it has subject matter jurisdiction under the Magnuson-Moss Act because Plaintiff alleged damages of $55,000 in his initial Complaint. *See* ECF No. 47; *see also* 15 U.S.C. § 2310(d)(3)(B) (civil action by consumer for damages may not be brought under the Magnuson-Moss Act if the amount in controversy is less than $50,000).

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Approximately one year later, Plaintiff again experienced engine problems. Plaintiff brought the vehicle back to Darcars on September 4, 2014 after seeing the same dashboard display seen during the September 2013 incident. ECF No. 54-2 ¶ 10; ECF No. 50-4. However, unlike the 2013 incident, the engine temperature gauge did not flicker and the engine did not shut off. ECF No. 54-2 ¶ 10. Additionally, Plaintiff testified that, one day prior, while driving in New York, Plaintiff drove the front end of the vehicle over a cement stop, damaging the underside of the vehicle. ECF No. 50-2 at 6–7.[3] Darcars provided Plaintiff with a Recommended Action Plan and free repair estimate, indicating that its technicians found that both cylinder heads were warped due to "intensive over heating and low compression," there was a slow leak in the radiator, and the radiator mount bracket was bent. ECF No. 50-5 at 3 (Recommended Action Plan); *see also* ECF No. 50-4 (Inspection Invoice). The technicians clarified that they found "two pinpricks" in the radiator hosing and a hole at the top of the radiator. ECF No. 50-2 at 7. Darcars then informed Plaintiff that the repair would not be covered under the vehicle's warranty because the damage was caused by an accident, ECF No. 50-2 at 7, and estimated that the repair would cost $8,478.31. ECF No. 50-5 at 3.

After receiving the repair estimate, Plaintiff filed a claim with his insurance company, Erie Insurance, for damage to the vehicle's engine and radiator caused by the aforementioned accident. ECF No. 50-15 at 4. Mishon Horton, a material damage appraiser for Erie Insurance, conducted an inspection of the vehicle on September 8, 2014. ECF No. 50-6 at 5. Horton observed that there was a hole in the radiator, the upper radiator hose was leaking, and a Darcar mechanic had performed a pressure test whereby the radiator exhibited a "heavy leak." ECF No. 50-6 at 7–8; *see also* ECF No. 50-11 (Horton photos of radiator leak). Erie Insurance ultimately

---

[3] Plaintiff had also, on prior occasions, damaged the underside of the vehicle but Darcars had not previously informed him that he caused any major damage. See ECF No. 11; ECF No. 54-2 ¶ 9.

3

denied Plaintiff's claim on November 25, 2014, determining that the damages were not related to hitting the cement stop, but rather appeared to be the result of wear and tear and mechanical breakdown or failure. ECF No. 50-15 at 5. Erie Insurance's decision was subsequently upheld by Administrative Law Judge Michael D. Carlis on appeal to the Maryland Insurance Administration on August 10, 2016. ECF No. 50-15.

Plaintiff has designated Troy Johnson as an expert witness. ECF No. 50-13. Johnson inspected the vehicle in the fall of 2015 and again on December 28, 2016. *Id.* at 4. Johnson opined that "[t]he damage inflicted on the vehicle [from the September 2014 accident] was minor and this damage could not have had anything to do with the eventual engine failure." *Id.* at 5. He further stated that he "pressure tested the coolant system to determine whether the radiator leaked and could not find any leaks. The only leak I could determine occurred at the engine internal head and/or gasket." *Id.* at 4. Johnson therefore determined that "based upon the fact the 2014 engine malfunction was similar to the engine failure in 2013, it is more likely than not that the 2014 engine failure was due to defective manufactured parts and/or workmanship or due to defective parts or workmanship related to the 2013 repair to the engine." *Id.* at 5.

Defendants have designated FCA US technical advisor Joseph Morton as an expert witness. ECF No. 55-1. Prior to Morton's involvement, FCA US technical advisor Kenny Kase conducted a pre-suit inspection on September 22, 2016 and prepared a preliminary vehicle report summary. ECF No. 56-2. Morton concurred with Kase's prior report and conducted his own inspection on February 21, 2017. ECF No. 55-1 at 4. Morton observed damage to the underside of the vehicle, including the radiator, and opined in his July 10, 2017 declaration that damage to the radiator caused a coolant leak which in turn caused the engine to overheat. ECF No. 50-14 ¶ 9. While Morton's inspection did not reveal a leak in the radiator, ECF No. 55-1, Morton relied

4

on, in part, observations made by Darcars' technicians and Horton who concluded that the radiator was leaking shortly after the accident. ECF No. 50-14 ¶ 9. Morton presumed that the leak and overheating of the engine would have been displayed through the vehicle's temperature gauge and further opined that Plaintiff's continued use of the vehicle caused the engine to fail. *Id.* ¶ 10.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Thus, "[t]he party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)) (alteration in original).

On a motion for summary judgment, the Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the non-moving party fails to make a sufficient showing on an essential element of his case as to which he would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## III. DISCUSSION

Plaintiff's three claims all center on the same basic premise—that the engine failure was caused by a manufacturing defect covered under the vehicle's express limited warranties or the implied warranty of merchantability. *See* ECF No. 27. In Count I, Plaintiff brings a claim for breach of these warranties under the Magnuson-Moss Warranty Act. *See* § 2310(d)(1) ("a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief"). In Count II, Plaintiff brings a claim under the Maryland Consumer Protection Act for failure to repair the vehicle pursuant to the terms of the express limited warranties. In Count III, Plaintiff brings a state law claim for breach of the express limited warranties under CL § 2-714 and breach of the implied warranty of merchantability under § 2-715.

For all Counts, Maryland law governs whether Defendants breached any of its express or implied warranties. *See Crickenberger v. Hyundai Motor America*, 944 A.2d 1136, 1142 (Md. 2008) ("Magnuson-Moss Act supplements State law with regard to its limited and implied warranty provisions"); *Zitterbart v. American Suzuki Motor Corp.*, 958 A.2d 372, 384 (Md. Ct. Spec. App. 2008) (citing CL §§ 2-313–315 ("when a consumer is the beneficiary of a limited warranty . . . [a Magnuson-Moss] claim is merely a means for the consumer to pursue the

6

substantive warranty remedies in the Maryland Commercial Code")); *see also* ECF No. 27 ¶ 20 (Plaintiff acknowledging that Count III is identical to Count I).[4]

### A. Breach of Express and Implied Warranties (Counts I and III)

Defendants claim that they are entitled to summary judgment on Plaintiff's breach of warranty claims based on Plaintiff's inability to demonstrate a defect attributable to Defendants. Under Maryland law, to recover for breach of an express or implied warranty, Plaintiff must establish that, at the time of the sale, the vehicle contained a defect that was both attributable to Defendants and causally related to Plaintiff's damages. *Crickenberger*, 944 A.2d at 1143–44 (referencing the "three product litigation basics"); *see also Harrison v. Bill Cairns Pontiac of Marlow Heights, Inc.*, 549 A.2d 385, 390 (Md. Ct. Spec. App. 1988) (plaintiff must present evidence sufficient for a jury to infer that the vehicle was defective and that the defect existed at the time of manufacture). Defendants argue that "under Maryland law, the plaintiff must produce competent expert testimony to establish a prima facie case that his vehicle suffered from a defect in the original material or workmanship of any of its systems." ECF No. 50 at 14 (citing *Evans v. General Motors Corp.*, 459 F. Supp. 2d 407 (D. Md. 2006)). According to Defendants, Johnson's opinion lacks an adequate factual basis to support Plaintiff's contention that the vehicle's engine contained a manufacturing defect because Johnson was unable to offer proof of the nexus between the defect and the manufacturer's act or omission causing the defect. *See Carter v. Shoppers Food Warehouse*, 727 A.2d 958, 963 (Md. 1999) (expert testimony "has no probative

---

[4] Under the Magnuson-Moss Act, an implied warranty is defined as "an implied warranty under state law." 15 U.S.C. § 2301. Written warranties are divided into full and limited warranties, but the Act only provides minimum standards for full warranties. 15 U.S.C. § 2303. Defendants' warranty was conspicuously labeled as a limited warranty, and Plaintiff does not argue otherwise. *See* ECF No. 50-1 at 5; 15 U.S.C. § 2303(a)(2) ("If the written warranty does not meet the Federal minimum standards for warranty set forth in section 2304 of this title, then it shall be conspicuously designated a 'limited warranty.'"). As such, the Act "requires no less than Maryland Law in order to establish breach of a limited or implied warranty as to a consumer product." *Crickenberger v. Hyundai Motor America*, 944 A.2d 1136, 1145 (Md. 2008).

force unless there is a sufficient basis upon which to support" the conclusions offered) (citations omitted).

Defendants' principle concern with Johnson's expert opinion is that Johnson was unable to identify a "particular defect" attributable to Defendants' act or omission. ECF No. 50 at 15. Specifically, Johnson opined that the vehicle's engine contained a leak caused by a warped head or failed head gasket but did not specify the exact part that was defective, whether the defect was caused by a defect in the material itself or the workmanship, and whether the defect stemmed from the original manufacture of the vehicle or the 2013 repair. ECF No. 50-12 at 5–6 (Johnson deposition transcript).[5] Furthermore, while Johnson acknowledged that driving a vehicle with a leaking radiator can lead to the same damage observed in Plaintiff's vehicle, he dismissed this possibility even in the face of evidence that the radiator had been leaking. ECF No. 50-12 at 9–10; *see also id.* at 12 (Johnson dismissing Darcars' Recommended Action Plan as "sales talk").

Despite Defendants' arguments, in reviewing Johnson's statement and deposition testimony, ECF Nos. 54-3, 50-12, the Court finds that Johnson's expert opinion is supported by an adequate factual basis. *See Wood v. Toyota*, 760 A.2d 315, 321 (Md. Ct. Spec. App. 2000) ("It is well settled that the trial judge—not the expert witness—determines whether there exists an adequate factual basis for the opinion at issue."). Johnson does not presume that simply because the engine was damaged, a manufacturing defect must have been the cause. Rather, Johnson's conclusion that the damage was due to a defect in the cylinder heads or head gaskets was based on his observation that he could hear coolant leaking into the engine block and that the damage

---

[5] Defendants further argue that if the manufacturing defect was the result of the 2013 repair, Plaintiff can only recover under a claim of negligent repair, not breach of warranty. ECF No. 58 at 9. However, Plaintiff submits page 18 of Defendants' subject warranty, which provides that exchanged parts used in warranty repairs have the same warranties as new parts. ECF No. 54-1. Defendants omitted this page from the exhibits provided with its motion for summary judgment and do not respond to Plaintiff's argument to this point in its reply brief. ECF No. 58. Moreover, Plaintiff's receipt for work performed in 2013 indicates that the parts were replaced under warranty. ECF No. 50-3. Therefore, the Court assumes that any work performed in 2013 is covered by the same express limited warranties covering the rest of the vehicle.

was similar to what was previously sustained in 2013 and covered under the warranty. ECF No. 50-12 at 5–6. *Cf. Evans*, 459 F. Supp. 2d at 411 (disregarding expert testimony on breach of warranty claim when expert failed to offer an opinion as to whether the vehicle suffered from a defect during the warranty period and if that defect resulted in a diminution in the vehicle's value). Johnson also had an adequate factual basis to dismiss a leaking radiator as a cause of the engine failure—he conducted or observed a pressure test on three separate occasions and did not find any evidence that the radiator was leaking and further opined that the damage sustained to the undercarriage of the vehicle was minor and would not have caused engine failure. ECF No. 54-3 ¶¶ 5, 9. That Johnson cannot pinpoint the exact part that was defective or whether the defect was attributed to the material itself or the workmanship associated with its installation does not render his opinion irrelevant. *See Watson v. Sunbeam Corp.* 816 F. Supp. 384, 388 (D. Md. 1993) (allowing expert testimony setting forth multiple potential sources of a design defect causing a fire). Thus, Plaintiff provides evidence beyond mere speculation that would enable a jury to rationally decide that it is more probable than not that the damage was caused by a manufacturing defect. *Crickenberger*, 944 A.2d at 1143 (citing *Ford Motor Co. v. General Accident Insurance Co.*, 779 A.2d 362, 370 (Md. 2001)). Defendants introduce a number of arguments that cast doubt on the weight of Plaintiff's evidence, and while these arguments may be persuasive to a jury, the existence of a manufacturing defect remains a genuine dispute of material fact that cannot be resolved on a motion for summary judgment.[6]

---

[6] Because the Court finds that Johnson's expert opinion has sufficient evidentiary support, the Court need not fully address Defendants' argument that, in the absence of expert testimony, Plaintiff may not bring a manufacturing defect claim. ECF No. 50 at 14. Nonetheless, the Court notes that under Maryland law, a plaintiff may rely on "an inference of a defect based on the happening of an accident, where circumstantial evidence tends to eliminate other causes, such as misuse or alteration" *Harrison*, 549 A.2d at 390. While expert testimony is required "when the subject of the inference is so particularly related to some science or profession that it is beyond the ken of the average layperson," it is not required for "matters of which the jurors would be aware by virtue of common knowledge." *Wood v. Toyota Motor Corp.*, 760 A.2d 315, 318–19 (Md. Ct. Spec. App. 2000) (internal quotations and citations omitted); *see also Laing v. Volkswagen of America, Inc.*, 949 A.2d 26, 39–40 (Md. Ct. Spec. App.

### B. Maryland Consumer Protection Act Claim (Count II)

Regardless of whether Defendants breached the express or implied warranties, Plaintiff's Maryland Consumer Protection Act claim cannot survive. Plaintiff alleges that Defendants used unfair and deceptive trade practices when representing that the vehicle came with express limited warranties and that in the event of malfunction during the warranty period, the vehicle would be fully repaid at no cost. ECF No. 27 ¶ 17. The Consumer Protection Act prohibits the use of unfair or deceptive trade practices in the *sale or offer of sale* of consumer goods, CL § 13-303(1)–(2). However, Defendants' breach of the warranty, without more, is not an unfair or deceptive trade practice. "[T]he only allowance the Consumer Protection Act makes for proving claims through evidence of a breach of warranty is the specific reference to the Maryland Lemon Law." *Evans*, 459 F. Supp. 2d at 414 (holding that breach of warranty is not an unfair or deceptive trade practice when seller did not know of alleged defect at time of sale); *see also* CL § 13-301(14)(xi) (providing that unfair or deceptive trade practices include violations of the Maryland Automotive Warranty Enforcement Act, also known as the Maryland Lemon Law). While Plaintiff may dispute whether the damage is covered under the warranty, Plaintiff has not brought a claim under the Maryland Lemon Law, and the record provides no indication that Defendants misrepresented the scope of the warranty or condition of the vehicle at the time of sale. Thus, summary judgment is granted in favor of the Defendants on Count II.

### C. Recovery of Consequential Damages

Plaintiff seeks recovery of the cost to repair the engine, as well as consequential and incidental damages such as a rental car and leasing charges, towing expenses, credit card interest,

---

2008) (noting that an inference may reasonably be drawn that the product is inherently defective when, for example, a new vehicle malfunctions and results in an accident). Therefore, even if Johnson's expert opinion is unable to identify a specific defect in the engine, the circumstantial evidence surrounding the damage could support an inference of the existence of a manufacturing defect.

and vehicle storage fees. ECF No. 27 ¶¶ 6, 7; *see also* ECF No. 34. The vehicles' warranty booklet provides that:

> The warranties contained in this booklet are the only express warranties that Chrysler Group LLC (Chrysler) makes for your vehicle. These warranties give you specific legal rights. You may also have other rights that vary from state to state. For example, you may have some implied warranties, depending on the state where your vehicle was sold or is registered. These implied warranties are limited, to the extent allowed by law, to the time periods covered by the express written warranties contained in this booklet. . . . Your warranties don't cover any incidental or consequential damages connected with your vehicle's failure, either while under warranty or afterward. . . . Some states do not allow limitations on how long an implied warranty lasts, so the above limitations may not apply to you.

*See* ECF No. 50-1 at 5.

Defendants argue that the language in the express limited warranties properly excludes consequential damages in accordance with Maryland law. ECF No. 50 at 20. Although the language of the warranty places clear limits on the damages that can be recovered, the Court must decide whether the identified exclusions are permitted by Maryland law.

### 1. Implied Warranties under the Maryland Commercial Code

Two Maryland Commercial Code provisions appear to be in conflict regarding whether a seller may bar a buyer from recovering consequential damages for breach of an implied warranty. Under § 2-719(3), "consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."[7] However, under § 2-316.1(2), a seller of consumer goods is barred from excluding or modifying an implied warranty, or the "remedies for breach of those warranties." Although Maryland courts have considered § 2-316.1 independently, *see, e.g., Anthony Pools v. Sheehan*, 455 A.2d 434, 441 (Md. 1983) (holding that contractual disclaimer of implied warranty of merchantability was ineffective under § 2-316.1 without considering

---

[7] This provision also states that a "[l]imitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable . . . ." *See* § 2-719(3). Although the vehicle here meets the definition of a consumer good, *see* § 9-102, the injury was not to a person.

11

consequential damages); *Boatel Industries, Inc. v. Hester*, 550 A.2d 389, 400 (Md. Ct. Spec. App. 1988) (upholding warranty's exclusion of consequential damages because Plaintiff was not a "consumer" covered under § 2-316.1); *McCarty v. Korvette, Inc.*, 347 A.2d 253, 259 n.7 (Md. Ct. Spec. App. 1975) (considering applicability of manufacturers' limitation on implied warranty and recovery of consequential damages but noting that subject warranty was made prior to promulgation of § 2-316.1), this Court is not aware of any decisions from a Maryland state court reconciling § 2-316.1(2) with § 2-719(3).

While the two provisions appear to cover overlapping areas, it is noteworthy that § 2-719(3) does not specify whether its allowance for the limitation of consequential damages applies to both express and implied warranties. In contrast, § 2-316.1(2) expressly prohibits a seller from "modify[ing] the consumer's remedies for breach of [the implied warranty of merchantability]." "As a rule of statutory construction . . . the specific terms of a statutory scheme govern the general ones." *D.B. v. Cardall*, 826 F.3d 721, 735 (4th Cir. 2016). Given that § 2-316.1(2) is specific to implied warranties, and § 2-719(3) is not, the Court will apply § 2-316.1(2), meaning that Defendants cannot modify any remedies for breach of implied warranties, including by imposing a prohibition on the recovery of consequential damages.[8]

Defendants argue that they may exclude consequential damages for breach of the implied warranty under § 2 719(3) because § 2-316.1(2) only prohibits the limitation or modification of *remedies*, which, they contend, is distinguishable from a limitation or modification of *damages*. ECF No. 58 at 13 (citing *Patapsco Designs, Inc. v. Dominion Wireless, Inc.*, 276 F. Supp. 2d 472, 478 (D. Md. 2003)). Defendants' reliance on *Patapsco* for this proposition is unpersuasive. In *Patapsco*, this Court considered a potentially similar conflict between § 2-719(2) and § 2-

---

[8] Alternatively, because § 2-316.1(2) provides that terms modifying remedies for breach of an implied warranty are unenforceable, the Court considers that such terms would be unconscionable under 2-719(3) and likewise disallowed.

719(3). Whereas § 2-719(3) permits a seller to limit or exclude consequential damages, § 2-719(2) provides that when an "exclusive or limited remedy [fails] of its essential purpose, remedy may be had as provided in Titles 1 through 10 of [the Maryland Commercial Code]," thus, seeming to expand the range of remedies to include consequential damages despite the language of § 2-719(3). *See id.* at 476. While the Court held that a provision excluding consequential damages survives as an independent provision, allowing the exclusion of consequential damages even where § 2-719(2) is triggered by a failure of an exclusive or limited remedy, *id.*, the Court did so without explicitly addressing any material distinction between "remedies" and "damages." And the Court's finding there seems reasonable, given that § 2-719(2) only appears to open up the possibility of additional remedies. *See* § 2-719(2) (a "remedy *may* be had as provided in Titles 1 through 10 of this article") (emphasis added). Here, rather than a more general provision, the seemingly conflicting provision is more specific as it explicitly prohibits the limitation of a consumer's remedy for an implied warranty. Therefore, applying § 2-316.1(2), Defendants' exclusion of consequential damages for breach of its implied warranty is unenforceable.[9]

### 2. Is the Exclusion of Consequential Damages in the Express Limited Warranty Unconscionable

While § 2-316.1(2) prohibits a limitation on remedies for implied warranties, that provision does not apply to express warranties. Thus, § 2-719(3) does apply to the express

---

[9] Defendants rely on two other cases to support its contention, but neither case is persuasive. *See* ECF No. 50 at 20–21 (citing *Bond v. Nibco, Inc.*, 623 A.2d 731 (Md. Ct. Spec. App. 1993) and *Burtt v. Ford Motor Co.*, No. 4:07CV000387, 2008 WL 373659 (W.D. Va. Feb. 11, 2008)). In *Bond*, the Maryland Court of Appeals upheld a seller's exclusions of incidental and consequential damages; however, the court recognized that the sale of goods was in a "commercial context," and it did not consider § 2-316.1. *Bond*, 623 A.2d at 739. In *Burtt*, the U.S. District Court for the Western District of Virginia, in considering whether Plaintiff satisfied the amount in controversy requirement within the Magnuson-Moss Act, found that a car manufacturer's disclaimer of consequential damages was permissible under Virginia's Commercial Code, which adopted the U.C.C. and mirrored § 2-719(3). *Burtt*, 2008 WL 373659, at *5 (citing VA Code § 8.2-719(3)). However, the court did not consider breach of an implied warranty of merchantability, and the Virginia Commercial Code does not contain an analogous restriction on the exclusion or modification of warranties as found in § 2-316.1 of the Maryland Commercial Code.

warranty and permits exclusion of consequential damages unless it is unconscionable. Plaintiff's Amended Complaint fails to set forth any facts suggesting that Defendants' exclusion of consequential damages for the express limited warranties was either substantively or procedurally unconscionable. *See* ECF No. 27. Specifically, there is nothing in the terms of the contract that is oppressive or unfair. *See Patapsco*, 276 F. Supp. 2d at 478–79 ("The underpinnings of the unconscionability doctrine are the prevention of oppression and unfair surprise."); *see also Kruger v. Subaru of America, Inc.*, 996 F.Supp. 451, 458 (E.D. Pa. 1998) (finding that similar limitation of consequential damages in an express warranty for car purchase was not unconscionable because it did not unreasonably favor car manufacturer and Plaintiff received warranty book at time of sale). Plaintiff also admitted that he received a copy of the warranty and discussed its terms with the sales representative. *See* ECF No. 58-4 at 8; *see also Walther v. Sovereign Bank*, 872 A.2d 735, 744 (Md. 2005) (procedural unconscionability deals with the process of making a contract and looks "much like fraud or duress in contract formation") (citation omitted). As such, Defendants permissibly limited the terms of its express limited warranties, and Plaintiff may not recover consequential damages pursuant to any breach of the express limited warranties.

### D. Plaintiff's Motion to Strike

Plaintiff moves to strike a portion of Morton's July 10, 2017 declaration, ECF No. 50-14 ¶ 9, where he opines that the engine damage was caused by a coolant leak following damage to the radiator. *See* ECF No. 55. Plaintiff argues that Morton's Expert Designation Disclosure ("Disclosure"), ECF No. 55-1, provided by Defendants during discovery on March 1, 2017, did not indicate that Morton "would render opinions that 'damage to the radiator caused a coolant

leak. The damage sustained by the radiator was not caused by any defect in material or workmanship attributable to the defendants.'" ECF No. 55-2 at 1 (citing ECF No. 50-14 ¶ 9).

Under Federal Rule of Civil Procedure 26(a)(2), an expert witness must provide a written report during discovery containing a complete statement of all opinions the witness will express, the basis for those opinions, and the facts or data considered by the witness in forming them. Fed. R. Civ. P. 26(a)(2)(B)(i), (ii). In addition, a party has an obligation to supplement the expert report if it learns that "in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties." Fed. R. Civ. P. 26(e)(1)(A); *see also Contech Stormwater Solutions, Inc. v. Baysaver Technologies Inc.*, 534 F. Supp. 2d 616, 622 (D. Md. 2008).

Morton's Disclosure does not affirmatively state that damage to the radiator caused a coolant leak. In fact, Morton states that he was unable to confirm, but could not rule out, a coolant leak when inspecting the vehicle in February of 2017. ECF No. 55-1 at 4. However, Morton states that he "concurs with the prior expert report of Mr. Kenny Kase that the vehicle was driven for an extended period without a proper amount of coolant, which caused the engine to overheat and fail." *Id.* He also states that in forming his opinions, "he may review and rely upon pertinent pleadings, discovery filed or taken in this matter, the service history of the vehicle, as well as any expert reports generated by the plaintiff's expert(s) in this action." *Id.* at 3. A review of Kase's expert report, and other discovery taken in this matter, makes clear that Plaintiff was on notice that Morton may rely on evidence suggesting that a leaking radiator led to the engine failure.

Defendants provided Kase's preliminary vehicle report summary to Plaintiff on December 13, 2016, prior to the start of discovery. *See* ECF No. 56-2. Kase stated that while he

15

was also unable to observe a leak in the radiator, the dealership's initial inspection report indicated a slow leak in the radiator, and it was his expert opinion that the engine failed "as a result of being in the front end collision and not a defect in product or workmanship. Due to the accident damaging the lower radiator mount and radiator, the engine coolant leaked out of the damaged radiator causing the engine to overheat." ECF No. 56-2 at 4.

All of the information supporting Kase's expert opinion, which was adopted by Morton, was available to the Plaintiff prior to the completion of discovery. Darcars' Recommended Action Plan clearly states that its technicians "found radiator slow leaking due to accident." ECF No. 50-5 at 3. Defendants also indicated that they may rely on materials received from Erie Insurance as related to Plaintiff's insurance claim dispute. ECF No. 56-5; ECF No. 56-6 at 3 (Defendants' Response to Plaintiff's First Request for Documents). These materials include photos from Horton showing damage to the underside of the vehicle. ECF No. 50-8; 50-9; 50-10; 50-11. While Morton's July 10, 2017 declaration also relies on Horton's deposition, which occurred on June 6, 2017, after Defendants provided Morton's Disclosure to Plaintiff, nothing set forth in Morton's declaration advances any materially different theories or facts in support of his position. Therefore, Morton's Disclosure provided Plaintiff with ample notification to support his expert opinion that the damage to the engine was caused by a leaking radiator not otherwise attributable to a manufacturing defect.[10]

---

[10] Even if Morton's Disclosure failed to disclose his opinion on the leaking radiator, such non-disclosure was harmless. In *Bresler v. Wilmington Trust Co.*, the Fourth Circuit provided that district courts are guided by the following factors in determining whether a party's non-disclosure was harmless: 1) surprise to the opposing party; 2) ability of that party to cure the surprise; 3) extent to which the evidence would disrupt trial; 4) and the importance of the evidence. *Bresler*, 855 F.3d 178, 190 (4th Cir. 2017) (citing *S. States Rack & Fixture, Inc. v. Sherman-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)). While Morton's statement in question is certainly important, the record shows that Plaintiff was aware of this theory of failure, was able to depose Morton to further inquire into his opinion, and Plaintiff's claim survives Defendants' motion for summary judgment herein.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to for Summary Judgment, ECF No. 49, shall be granted, in part, and denied in part, and Plaintiff's Motion to Strike, ECF No. 55, shall be denied. A separate Order follows.

Dated: February 26, 2018

GEORGE J. HAZEL
United States District Judge